GARVIN, Respondent, vs. GATES, Appellant.

*February 1 — February 19, 1889.*

*(1) Contracts: Logs and logging: Court and jury. (2) Settlement: Instruction to jury. (3) Recoupment: Partial performance of contract. (4) Evidence: Conversations with third persons.*

1. By the terms of a contract logs were to be delivered into a certain stream " in good driving water," and landed " so that they could be easily started through the dam in the spring." It appeared that at the point where the logs were landed the stream, at its or-

dinary stage, really had no good driving water, but that at times of high water logs could be run therefrom by means of the water set back from a flooding dam below; and the evidence tended to show that the logs might have been run down the stream had not the dam below been choked with other logs. *Held*, that it was not error to submit to the jury the question whether the logs were delivered in good driving water.

2. In an action for a balance alleged to be due upon an account stated, the plaintiff attempted to prove a settlement of all matters between the parties. The court charged the jury that if all matters were settled, and the defendant, knowing just how the plaintiff had performed the contract upon which his claim was based, had talked over that matter, and the parties agreed as to the amount due, then they were bound by the settlement: that no advantage could be taken, but the parties must have fully understood and agreed that any claim for a breach of the contract was included in the matters settled, otherwise such claim was still open and unadjusted. *Held*, sufficiently favorable to the defendant.

3. In an action upon a contract which the plaintiff had not fully performed and which the defendant had employed a third person to complete, the defendant may recoup what such completion was fairly worth, but not necessarily all he paid therefor.

4. A party may state his understanding of a conversation between him and a third person who has testified as to the same on behalf of the opposite party.

APPEAL from the Circuit Court for *Clark* County.

The complaint alleges, for a first cause of action, that on 'March 25, 1886, an account was stated between the parties and a balance of $369 was found to be due from the defendant to the plaintiff; that the defendant promised to pay said sum, but no part thereof has been paid. For a second cause of action it is alleged that the defendant is indebted to the plaintiff in the sum of $101.10 upon an account for goods, etc., sold and delivered, labor and services rendered, the use and hire of a team, and moneys paid for the defendant at his request, between March 25 and July 25, 1886. Judgment is demanded for said sums, with interest.

The answer, besides denying all allegations not admitted,

alleges that in November, 1885, the plaintiff agreed for a stipulated compensation per thousand feet to cut, mark, stamp, haul and deliver, during the ensuing winter, all the pine timber on a certain quarter section of land, and "to deliver the logs into Hay creek in good driving water, and land them so they can be easily started through the dam in the spring;" that in pursuance of such contract the plaintiff delivered into Hay creek a quantity of logs from such quarter section; that on March 25, 1886, the parties had an accounting by which it was ascertained that after allowing to the plaintiff the stipulated compensation for all logs which he claimed to have delivered according to the agreement, and deducting advances made by the defendant, there remained a balance of $369 in favor of the plaintiff. The answer then alleges that said accounting and settlement was to be final only in case the logs were delivered in accordance with the agreement, and that it was procured by the plaintiff by falsely representing that the logs had been so delivered, the plaintiff then well knowing that he had not delivered the logs in good driving water so that they could be easily started through the dam, but the situation of the logs being then unknown to the defendant. The answer then alleges that the defendant was put to great expense in starting said logs through the dam in addition to what he would have been had the logs been landed in good driving water, to wit, in the sum of $300.

Further, by way of counterclaim, the answer alleges that the plaintiff is indebted to the defendant in the sum of $200 for the driving of about 200,000 feet of logs belonging to the plaintiff, in the spring and summer of 1886. Judgment is demanded on the counterclaim for $131.

A reply admitted the making of the agreement set up in the answer, and alleged that the logs of the plaintiff, driven by the defendant, were not to be charged for by the defendant at a higher rate than fifty cents per thousand.

The evidence given on the trial, and the instructions to the jury, will sufficiently appear from the opinion. It seems to have been agreed by the parties on the trial that the amount found due to the plaintiff on the accounting was $369.43, and that the defendant was indebted to the plaintiff upon the second cause of action in the sum of $93.80. The jury found a verdict in favor of the plaintiff for $329.49. Whether the jury allowed the entire difference between this amount and the face of the plaintiff's claims with interest, for the driving of the plaintiff's logs by the defendant, or allowed something upon the defendant's claim for expenses incurred because the logs were not landed in good driving water, does not appear. The defendant appeals from the judgment entered on the verdict.

*R. J. MacBride*, for the appellant, contended, *inter alia*, that the court erred in charging that if what the defendant paid for having the logs hauled from above the beaver dam down the creek into good driving water was more than it was fairly worth, then the plaintiff would not be liable to account to him for the full amount paid, but only for what it was fairly worth. The true rule is that in such a case the defendant would be entitled to recover the *cost* of fulfilling and completing the plaintiff's contract. *Hinckley v. Beckwith*, 13 Wis. 31, 36; *Peters v. Whitney*, 23 Barb. 24; *Usher v. Hiatt*, 18 Kan. 195; *Masterton v. Mayor*, 7 Hill, 61; *Fox v. Harding*, 7 Cush. 516; 1 Sedgw. on Dam. (7th ed.), 459, note *a; Boyd v. Meighan*, 48 N. J. Law, 404.

For the respondent there was a brief by *James O'Neill* and *Geo. L. Jacques*, and oral argument by *Mr. O'Neill*.

COLE, C. J. The principal controversy in this case turns upon the question whether the plaintiff performed his contract by delivering the logs which he cut for the defendant into Hay creek in good driving water, landing them so that they could be easily started through the dam in the spring.

The defendant claims that he did not thus deliver them, and that in consequence of the logs being delivered at a wrong place he was put to great expense in getting them to water where they could be floated down the stream. The agreement is plain, and bound the plaintiff to " deliver the logs into Hay creek in good driving water, and land them so they can be easily started through the dam in the spring." Was this condition kept and performed by the plaintiff?

The contract should be construed in the light of the surrounding circumstances and the situation of the parties in respect to the subject matter about which they were contracting. This rule is familiar in the interpretation of contracts, that the court should as far as possible put itself in the situation of the parties, and see how the terms of the instrument affect the property or subject matter. 1 Greenl. Ev. § 287. The evidence shows that the logs in question were delivered or landed on Hay creek at an old beaver dam. This beaver dam was a little distance above a flooding dam, constructed to set back the water. The evidence is quite in accord and conclusive that Hay creek, at the point where the logs were landed, in its ordinary and usual stage of water really had no good driving water for floating logs; but the water which set back from the flooding dam at times of high water was sufficient to enable logs to be run from that point. The court below submitted the question to the jury upon the evidence whether the plaintiff had performed his contract by landing the logs at a place that lumbermen would consider fairly good driving water, and where the logs could be got at with fair facility in the season of ordinary driving water. It seems to us that this was peculiarly a question of fact for the jury. But one of the main errors relied on for a reversal of the judgment is this action of the court in submitting the question whether the logs were landed in good driving water. It is said the evidence was

Garvin vs. Gates.

all one way on that point, and that the court should have determined as a matter of law that the logs were not landed in good driving water within the meaning of the contract. We cannot agree with counsel in that view of the matter. The parties must be presumed to have contracted with reference to the nature of Hay creek in its natural condition. And when the plaintiff landed the logs in the creek as near the flooding dam as was necessary to enable them to be run down the stream when the water was set back by the dam in the spring as it usually was, he had performed his contract. There is considerable testimony that the logs might have been run down the channel of the creek through the beaver dam, had not the dam below been choked with logs. So that the difficulty in getting the logs down the stream was not because they were not landed in good driving water, but because the dam was filled with other logs, which prevented these from being driven. We do not say that this was the fact, but merely that there was evidence tending to prove such a state of things, which it was proper to submit to the jury with the other circumstances. So it was impossible to say, as a matter of law, that the real obstacle to running the logs was because they were not landed, as the contract required, in good driving water; for there certainly is evidence that they might have been driven in the spring from where they were landed, if the dam below had been free from other logs. So that error cannot be predicated upon the fact that the question was submitted whether the plaintiff performed his contract by placing the logs where they were put by him. If the logs were landed where men in the lumber business, engaged in driving logs, would consider there was good driving water in view of the character of the stream and its surroundings, this was all that was required by the contract.

Another error assigned is the ruling of the court in allowing the plaintiff to answer, under objection, the question

put to him, in substance, whether he knew the location of the beaver dam in the winter when he was putting in the logs. It is said it made no difference whether he knew or did not know of the existence of the beaver dam; that he was bound to deliver the logs in good driving water. The counsel on the other side say, in answer to this objection, that the question was not asked to excuse non-performance of the contract, but to explain a conversation that the witness Bailey had testified to, and to show that the plaintiff had not knowingly landed the logs at an improper place. It seems to us it was competent for the plaintiff to state his understanding of the conversation he had with Bailey, and which the latter had testified to.

The question asked the plaintiff on cross-examination, and ruled out, as to whether he had given the defendant a note for a yoke of oxen purchased in November, 1876, was clearly irrelevant, and properly excluded.

Some exceptions were taken to the charge of the court. In the complaint it was alleged that there was an accounting between the parties in March, 1886, and that a balance of $369 was found due from the defendant to the plaintiff. On the trial there was an effort made to prove a settlement of all matters between the parties. In regard to this account stated, the court, in effect, charged that if all matters were settled and the defendant, knowing just how the logs were landed, had talked over that matter, and the parties agreed as to the amount due, then they were bound by the settlement; that no advantage could be taken, but the parties must fully understand and agree that any claim for a breach of the contract was included in the matters settled, otherwise such claim was still open and unadjusted. This is really all the charge amounts to, and we can perceive nothing in it unfavorable to the defendant. The defendant claimed that he had paid $300 for hauling the logs from above the beaver dam down the creek into good driving

water. As to that claim the court charged that, if the defendant paid for this hauling more than it was reasonably worth, the plaintiff would not be liable to account to him for the full amount, but only for what the hauling was fairly worth. We do not perceive any valid objection to the rule of damages thus laid down. It seems to be founded in good sense, and accords with principles of justice and equity. Upon what principle could it be claimed that the defendant was entitled to recover of the plaintiff more for the hauling than it was fairly worth to do it? It is not to be presumed he would pay more than the service was reasonably worth, but if he should see fit to do so he ought to bear the loss. We think the charge is unobjectionable.

These remarks dispose of all the questions which we deem it necessary to notice.

*By the Court.*— The judgment of the circuit court is affirmed.